My name is Philip Furia and I represent the appellant Luke Hogan in this case. On this appeal we asked this court to reverse the decision by the trial court which dismissed Mr. Hogan's breach of contract claim against SMU. Appellant contends that the trial court erred in two main ways. First by ruling that SMU was not contractually obligated to provide plaintiff with in-person education and second by ruling that the Pandemic Liability Protection Act, PLPA, is constitutional as applied to his claims. Now on the contract claim we're asking this court to follow its own jurisprudence in the King v. Baylor decision. Let me ask you about the claim. There's an argument by your friend on the other side, I think, that this was not in the complaint. It comes up in the motion to dismiss. Give me the pleading background on the contract claim. Sure, so the contract claim does specifically mention the agreement, which is the student agreement. Well, is it in the complaint? That's what I mean, the procedural. Yes, the student agreement is in the complaint and it's also been, it's also part of the motion to dismiss. So yes, it's part of the pleadings and it's before this court. Okay. Did you plead it was a contract? Pardon me? Did you plead that it was a contract? We pled that it was part of this universe that created the contract for in-person education. Because in King, and I was on the panel, in King there was, as I recall, an alternative pleading. There was an implied contract pled. There was also an express contract pled, the FRA, whatever that stands for. Right. We didn't do that here. Okay. So, so did you, well, did you, did you bring a contract claim based on an express contract or an implied contract? It was based on an implied contract. So, but here we have an express contract that does not expressly say what that we're saying they agreed to. So you still do need to look to all the different elements, including all of the different representations that were made, the fees that were paid, et cetera. You're relying on an express contract. You're not, you're not coming here and saying we should reverse because there's a, there, there, you've stated a claim for an implied in fact contract. Correct. Yes. We're saying there's an express contract in accordance with King, which came out after the trial court's decision. Right. But more than that, King, we think provides a perfect framework. And so this case should be sent back to the trial court to determine what the term educational purposes means in the student agreement. And frankly, to make everyone's lives easier, this court can just cut and paste Judge Duncan's concurrence from King into this decision because it provides a perfect roadmap as to how to, uh, lay it on too thick. That is the best part of the King opinion. That's what I always thought ever since it came out. So yeah, I think that, but that's exactly how this court should proceed. Send it back and let the trial court decide if educational purposes is ambiguous. I mean, the cons to be fair, the contract language here is a little bit different than in King, right? Oh, it's a little different, but not tremendously. So one says educational services. This contract says that tuition and fees are going to be used for educational purposes. So yeah, it's not the exact same language, but it gets at the same problem. We don't know exactly what educational purposes means just by looking at it. But if you look at the context, the best example, I think in all three of these cases, the precedents and yours, the language you're relying on is just to make sure that the school has the best argument that if you don't pay your bill, it's not dischargeable in bankruptcy because all three of them side to 11 U S C whatever it is, three 63 or something like that. That's an odd provision to make the focus of whether you're entitled to in-house learning. Well, you're right, but we're not focusing on that particular provision. We talked about the contract. If it is a contract in which that language appears and using the LA that particular language. Correct, correct. But we point to a different portion of the contract specifically where the university agreed to use tuition and fees for educational purposes. And when you look at that and you consider, for example, there's one fee, it's a, it's a mandatory general fee that was supposed to be used for things like health facilities, fitness facilities, labs, libraries. I mean, if that's not in person, nothing is, and those were not refunded. So we believe that at the very least, were there any refunds like meal plan or something in the record? There, there is nothing that would suggest that there is a specific refund. You don't need to go outside of the record. I just want to mention though, that in fairness, judge star noted that there were some, uh, matters put into the, on the motion to dismiss that he felt were maybe a little too far for judicial notice. So I can allow my colleague to speak about that if there is some evidence of refunds, but, um, you know, it's, this court doesn't need to parse whether or not there were particular representations, just send it down to the trial court, let them do it. That's really the appropriate forum for that to happen. What is different in this case with the Texas statute, which may or may not be retroactive? How does it apply here differently than in the Baylor case? Well, it doesn't apply differently. Does it, is the timing different on when the suit was filed in this case versus the Baylor case? Slightly different. The case kind of went through the judicial process here on, at a, at a slower pace. There was some issues with regard to the forum, with regard to repleting. They were filed around the same time, but the Baylor case was a little bit further along. There may have been some discovery there that there wasn't here. And that does factor into one of the Robinson, um, factors that I'll speak about. Um, so as, as your honor, uh, previewed, we're also saying that the PLPA is unconstitutionally retroactive. So we take a look at the Robinson test. Um, the very first step is to analyze the strength and the nature of the public interest that served. Surely COVID was an unprecedented, uh, catastrophe, but there are no findings of fact in the legislative history that justify this particular bill to be passed. It's just general statements. COVID-19 is unprecedented. There is an onslaught. We've never seen anything like this before, but the trial court attempted to analogize that to the Supreme Court's ruling in Tenet where there actually was a record. And if I can read briefly there, the court said the legislature in that case, now let me just to back up, that's a case that involved a repose statute concerning medical malpractice claims. The legislature conducted hearings, gathered evidence of the increasing cost of malpractice insurance resulting from claims that endured indeterminately. As a result, the legislature expressly found that a spike in healthcare liability claims was causing a malpractice insurance crisis that adversely affected the provision of healthcare services in Texas. I mean, that's a real finding of fact. They actually conducted hearings and determined something here. We don't have anything like that. We just have a generally stated public interest with no findings of fact. So that weighs in favor of my client's claim here. The Texas law here that you say is unconstitutionally retroactive. It's an important law. No doubt it is at issue in plenty of cases in federal and state court. Has the Texas Supreme Court had the opportunity to weigh in on it yet? Not to my knowledge. Okay. Then wouldn't the natural thing for us to do be to certify a question to the Texas Supreme Court? Actually, in this situation, though we do contend that there are enough breadcrumbs here for us to create a decision based on the record, I also recognize that this could be a situation where that would be the more appropriate course. Because there are similar cases, but there's nothing exactly on point, both factually and with regard to the law. So I think that that would be a reasonable outcome. But in keeping with my position that you can decide this issue, we next look to the interest that was impaired by the law. And here, that's Mr. Hogan's settled expectation that he can sue his contracting party for breach of contract. At the time the law was passed, he had entered into an agreement with SMU, SMU had breached the agreement, and he sued them for breach of contract. That had all happened already. So this law impaired settled expectations that rightly existed. Next, we look at the extent of the impairment. Here, the impairment was complete. A complete eradication of his claim. He was suing SMU for monetary damages, and this law says he can't do that. Now there is some thought that, well, this is a remedial statute, that's what my colleague says. But even changes in the law that affect a remedy can be unconstitutional if the remedy is taken away altogether, or it's encumbered with conditions that would render it useless or impracticable. That comes from a 170-year-old Texas Supreme Court decision, de Cordova. Also, Robinson itself said that remedial statutes are usually constitutional, but not always. What did you seek? You sought damages, and did you seek injunctive and declaratory relief also? In the complaint, the only place injunctive and declaratory relief are mentioned are a throwaway line. It's literally subsection G of their prayer for relief, where we ask for other and further relief. Well, what would an injunction or declaratory relief mean to your client at this point? I mean, it never meant anything. We never wanted one. Your client had graduated. Your client had already graduated? Exactly. We were never looking for an injunction or ... So to say, oh, well, he can still enforce his contract, he can just get an injunction. An injunction for what? Was this ever certified as a class action? No. Is that pending if we were to remand it? It is not pending currently, no. We didn't get that far. Whenever you say we were to remand it, that would be addressed? Well, I think that it would be addressed. Did you seek it? Didn't you file it as a putative class action? Yes. It was filed as a putative class action. We didn't get past the pleading stage, so if you remanded it back, I would presume the court would look at it again as a pleadings motion, and it would only be if we succeeded that perhaps several months down the road, the question of certification would become ripe. What's the status of the Baylor case on remand? Do you know? Yes, I do, in fact. After Judge Duncan laid out that wonderful roadmap on how to review ... You did like his opinion. I did. It was great. I've heard it twice now, but ... After that decision came down, it was remanded to look at the contract, and instead, the trial court ruled on constitutionality only and not the contract, so it still has ... The district court ruled on constitutionality. Yes. You sent it back to rule on the contract. They ruled on constitutionality. Constitutionality of the Texas law? Exactly. This court said that you didn't want to look at constitutionality, but you remanded on the contract, and they just did the reverse, so there's been no further development as to whether a contract exists pursuant to your remand. It's kind of odd, actually. What about the Tulane case? You know what's going on with the Tulane case, since we're just talking about cases? I do not. I know that that was another case that came out of this court, but because it was under Louisiana ... It implied, in fact, contract under Louisiana law? Exactly. Exactly. No, I don't know the current status of the trial court. You had amended your complaint once. Is that right? Yes. Then there was a decision by the district court, and then King came out? That's exactly correct. Okay. All right. The other point I want to make concerning the extent of the impairment are grace periods. Courts look to whether a grace period is provided between the time a law is passed and the time the law goes into effect before deciding what sort of impairment exists. Here, not only was there no grace period, there's a look back. This law applied to cases that were already filed, like Hogan's and like the King versus Baylor case. What's even more evidence of an overreach, it applied to any case that wasn't at final judgment. If our case was in trial and I was about to give a closing argument the day that that law was signed, the case would have been completely eviscerated by the law. Now, that's not the facts here, but it just shows how far they went. Weighing all these different constitutional concerns together, it's our Mr. Hogan's claims. Unless the court has any particular questions, I can rest on my briefing and speak with you again on rebuttal. Thank you. May it please the court. Scott Bernard for Appellee SMU. I want to spend a little bit of time starting off on the PLPA and its constitutionality. Well, let me pick up, you may immediately going to address it, Judge Duncan's suggestion, which is floating in this case. Isn't this a significant issue of state law that Texas Supreme Court should be given a chance to address? I think in the Amazon case from 2022, there's different factors that you can look at. One of the factors is what is the existing body of law that's out there right now. We have the Robinson case that this court can look at. In the DeGioia case. You know what you're talking about if it's remedial only, and it seems to me there's no remedy left in this case that amounts to anything. And that to me is the significant question of whether that case law would help you or hurt you. Sure. And I guess, Judge Southwick, in the DeGioia case that Judge Costa had, there was a similar situation where the question was whether a retroactive statute was going to take away two different ways to recognize a foreign judgment. And there it was, Judge Costa applied the Robinson case and ultimately determined even though it could result in the fact that the judgment wouldn't be recognized and the plaintiff would get nothing, it was acceptable. So that's an instance in which this court has applied the Robinson test. But obviously, this court has the discretion to send it to the Texas Supreme Court if it would like. I'm not suggesting you have to concede anything, but it does seem to me it is a significant question that is not ultimately, but it's significantly a Texas state law question. It is. I agree that it's definitely a Texas state law question, Judge Southwick. I would just say that you have the Robinson case followed by the Union Carbide case, and there's a few other Texas Supreme Court cases that have interpreted Robinson that give this panel enough to look at, but it obviously has the discretion to send it to the Texas Supreme Court if it would like. Proceed. Thank you. I want to go through, well, one of the things I want to point out is how exceedingly difficult it is to find that a statute is unconstitutionally retroactive. In fact, in the 150 years of the state of Texas, it's only happened four times by the Texas Supreme Court where they sustained it. And those cases are very different because they either resurrected expired claims or they quashed claims that were fully mature, and that is different from what we have. These are not fully mature claims. I'll go through the different Robinson factors that my colleague went through, and the first one is the nature and strength of the public interest. In their pleading at page 23, they said that there are no legislative findings whatsoever. That is not the case. There's actually a lot in the record here. Starting at 420 in the record, the Texas legislature's house report addressed the educational institutions. At 660, they talk about the onslaught of COVID-19 and its impact straining the state's educational institutions. And also at 660, it talked about widespread concerns that this was going to impact education and create lawsuits. And that's not a theoretical or abstract concern. In November of 2020, there were already 237 of these cases that were pending. That's in the record at 172. Six of those cases against schools in Texas. You mean nationwide? Nationwide. Nationwide. And six of the cases were in Texas. That's correct. But the point being, this was a real threat. And the issue was the legislature wanted, you know, Governor Abbott had come out with Executive Order 4, which had shut down the schools, and the legislature wanted to continue education. In the Texas Educational Agency case that we cited, education is a compelling public interest. And so we wanted to continue to have the schools educate, but not be threatened or worried about large monetary damages, judgments, or interruptions to their ability to educate with cases like this. This is a far cry from the Robinson case. In the Robinson case, there were zero legislative findings at all. And Robinson also, as I'm sure the panel knows, was ultimately found to protect one company, Crown, which is a successor company, and it had to do with asbestos liability. In the court there, in Robinson, the Texas Supreme Court said that's a slight public interest. Here, it's a much broader public interest. It covers all schools in Texas, whether it be preschools, high schools, colleges, universities, it's broadly applied. Turning to the second factor, the nature of the right impaired by the statute, this factor largely turns on the predictability of the claim. And here, it was not predictable because the claim had not matured. I think we talked a little bit, or the panel talked a little bit about this before. Hogan's claim was really in its infancy. There had been nothing on the merit so far. There had been no discovery, so it was impossible to tell if it was a substantive claim or not. In fact, we were still disagreeing about whether the case belonged in state court or federal court, and the court had not ruled on the remand when the statute went into effect in June of 2021. And in fact, the plaintiff had not filed his amended complaint, the operative complaint, until after the statute. So this case was not very far along. And as Judge Starr correctly pointed out, his right to recover was non-existent at worst because he had not pled a specific contractual provision allowing for in-person learning, and it was unpredictable at best. Because it was a relatively new claim, it was not clear how the damages were going to work out and if that was going to create some sort of review of the quality of education that the Texas Supreme Court had not looked at before. So Hogan had no predictable recovery. Turning to the last element of this. I mean, at the time that Judge Starr wrote that, King hadn't come out, Jones hadn't come out of this court. I mean, it might have been a different calculus. I think at that time that when Judge Starr wrote the opinion, though, he was focused primarily, and we can maybe talk about this in a minute, on what was actually in the pleadings. And at that point, it was an implied contract that was being asserted by the plaintiff, not kind of a defense. Okay. Yeah, I do want to hear about that, but you can go on. For sure. Just briefly talking about the third element, then, which is the nature of the impairment. I heard my friend say that here you have a situation where his claim and remedies are completely being abrogated. That's not the case. He pled three different remedies. Injunctive relief, declaratory relief, and damages. Yeah, but what is injunctive and declaratory relief? How is that meaningful relief in this case? Well, I think, again, you would have to ask my friend, which you did, and it was something that they pled after the PLPA was enacted. I think that's very important. So they added declaratory relief and they added pass. But it's not necessarily whether you're going to have success on the claim or not. It's whether the remedy is available. And so the issue here, and that's what we see. Yeah, I just don't get it. I mean, what are you going to get, a sticker if you win? I mean, you don't get any damages. I want my money back. I didn't get what I bargained for, so I get. There are times, though, when, again, it doesn't, the constitutional analysis that's done by the legislature, whether he's going to be successful on it or not, and it's an as-applied challenge. And so we're looking at Mr. Hogan. Other students may be affected in different ways. I think, as Judge Duncan, you pointed out, he did graduate, I think, that May after the pandemic. Other students may be differently situated. They might have wanted to bring some sort of injunction if the school going into the fall of 2021, if they wanted to try to stop the online learning or they could get a declaratory judgment that it's a breach so that the school stops it. There are some means of relief that could have been sought. Maybe not by Mr. Hogan, given his unique circumstances where he graduated, but I think it could have been done by others. And the other issue on that, we talked about this some, is in the DeGioia case, as an example, and also the City of Tyler v. Light case, that was a case that was cited by the Robinson case, the Texas Supreme Court, at 141, and they explained it was a retroactive statute that wasn't unconstitutional because, quote, it affected only a remedy, not a right, even though the claimant may not recover, perhaps not at all. So the Texas Supreme Court, in this seminal case, Robinson knew that that's what could happen with these retroactive statutes. There are other cases along the same lines in Burlington Northern where Judge Weiner was on the panel from 2005. It says, quote, laws affecting a remedy are not unconstitutionally retroactive unless the remedy is completely taken away. Here, the remedy is not completely taken away. There's the potential for injunctive relief, there's the potential for declaratory relief, and there may be potential for other relief that is not monetary. The final point on this, and I think you see Judge Willits say it in the Robinson concurrence, unfair does not necessarily mean unconstitutional. And Judge Counts, in what I'll call Baylor 2 case, kind of came to the same conclusion. There's 150 years of jurisprudence here. This is what the Texas Supreme Court has been doing for this time, and we have to follow what the Texas Supreme Court has been doing. Is that one coming up to us again? Do you know? Is Baylor coming up to us again now on the retroactivity thing? Oh, great. Well, so a king comes out after Judge Starr writes his opinion. Why don't we just remand and say, well, we recognize that you have a right claim here. So this one's similar to that one. Send it back. Anything wrong with that? Yes. So the question being kind of how is this different from King? And I think there's at least two different ways that I would point out. The first one is what was pled, and pleadings matter. Under Federal Rule of Civil Procedure 8, under the Texas standards for pleading a contract, it was not pled, either in the original petition or in the amended complaint that came out after the statute was passed that there was an express contract. Mr. Hogan was saying there was an implied contract. That was his entire case. You can amend the complaint or avoid the need to amend if you try something by consent. At the time of the motion to dismiss, was it being argued as a actual contract, and did you respond to it in that way? There was some discussion about whether, again, trying to kind of rope in the educational services concept. When King came out, Mr. Hogan changed his tune and started arguing a different type of case, which was an express contract case. But as this Court knows— It was not ever presented to Judge Starr in that way. It was not presented to Judge Starr in that way. That's right. Well, not in the pleading— The court is in the complaint. I'm talking about just in any other pleading, was it presented to him in that way? It's a fair point. So it was not presented to him in the pleadings. It was presented to some extent in the motion to dismiss briefing. But as we all know, you can't use motion to dismiss briefing to amend a complaint. And so it wasn't— I would argue it was still not properly— In the complaint, did you object to it and said that's not in this case? He's arguing in response to the motion to dismiss this, but that's not been pled. So if you basically accepted it, then we're in a different ballgame. He started changing his argument in the motion to dismiss pleading to address the contract and try to make it more of an express. But as far as the extent of which he uses the phrase educational services primarily in the motion to dismiss pleadings, I think educational purposes may come up only once in a footnote. And so I'm not sure if I would agree that that's necessarily pleading it by consent. But even if he had pled it, and we would obviously respectfully say that he has not pled an express contract and has not pled educational purposes, there's still a second reason, at least, why this case is different from King. And part of it is what Judge Southwick, you were talking about earlier about the bankruptcy aspect of this. The Texas Supreme Court in the URI case tells us from 2018, you have to look at the context of the words and how they're being used. Context matters. And it's very important in this particular case. If I could just read for a second from the SMU language, it says, quote, all proceeds, money, all proceeds from this agreement will be used for educational purposes and constitute an educational loan pursuant to a section of the bankruptcy code. So the representation or the discussion there is, and this is a representation being made by Mr. Hogan. I recognize that the proceeds from this loan are going to be used for a dischargeable aspect of this loan that I think you refer to, uh, Judge Southwick. And so the- Hasn't that already been addressed in the Baylor case? I mean, it's the same language in all three, similar language in all three, in the same subsection, A8 of the bankruptcy section. It seems we were over that hurdle. I would respectfully say it's very different because in SMU, Mr. Hogan is saying, I recognize that the money will be used for educational purposes. He's making a representation. In the King case, as alleged, Miss King at paragraph 122 of her complaint in the alternative, as Judge Duncan pointed out in his concurrence, she's saying Baylor made a representation to me. So that's another difference. Here, Mr. Hogan's making the representation. In the King case, Miss King is alleging, I'm not saying I agree with her, but she's alleging in paragraph 122 that Baylor's making the representation to her and using different words, educational services. And so in her, her alleged representation is Baylor is providing me with educational services. Mr. Hogan is saying, I agree that this money will be used for educational purposes. So it qualifies, which is a benefit to SMU as a non-dischargeable loan. The third factor I would like to just briefly touch on is to the extent that this court is contemplating whether the case should be remanded to Judge Starr to look at the surrounding circumstances analysis, I would argue that that's already been accomplished. In the amended pleading, and again, the plaintiff acknowledges this in page five of his reply brief, the same things that he would have Judge Starr look at are the same things that Judge Starr already looked at and that this court asked the magistrate or the judge to look in Baylor one, which is in the pleadings Judge Starr has gone through, he's looked at the admissions contract, the marketing materials, you name it, and he's determined that there was no implied promise for in-person learning. That's the same type of analysis that you do with surrounding circumstances. And since that's already been accomplished, there's no need to do it again. There's nothing new to do on remand. And so I see my time is up. We ask that you affirm the lower court's decision. Thank you. All right. May it please the court. Will Wassdorf with the Office of the Attorney General, representing the state of Texas, here defending the constitutionality of the Pandemic Liability Protection Act. Mr. Wassdorf, can you tell me, are there cases pending in the Texas state courts that are testing the constitutionality of the Texas statute here? I am not aware of any. With respect to that issue, I would agree with Apeliz that there is sufficient guidance in the Texas jurisprudence, although not specifically on this statute, to support this court's determination. So you don't think we should certify? I do not believe that you need to, but that is up to you to determine. Well, sure. There is one thing I wanted to briefly address that has not been discussed, that is in our briefing. Unfortunately, it's not as clear in our briefing as I would have hoped, and that's the Fire Protection Services case. It is undisputed by both sides that the Robinson factors control this retroactivity analysis. However, Fire Protection Services, I believe, created an order in which the factors should be determined. Specifically, they, it requires, and I think everybody approaches the numbering differently, but the nature of the right impaired and the extent of the impairment are a threshold analysis before the court gets to the public interest, according to the Fire Protection Service. What do you think about the nature of the impairment here? I struggle with that a little bit, because it does seem like it's not entirely fair just to say, well, this is the remedy has been partially impaired. I mean, I think that is factually and legally true that only one aspect of the remedy has been impaired, the taking away of monetary damages with respect to this small class of defendants and the small class of claims. Remember, it only applies to educational institutions and for claims arising out of the alteration of their program due to the pandemic. Um, I understand the panel is struggling. Yeah, they get nothing though. That would, however you define that class, they get zip. I don't, I don't think that's okay. What do they get then? Well, they are entitled to injunctive relief if it is true. And how does, how is that meaningful? You know, maybe angry at me for saying this. I hope not. But, um, no anger from the bench with respect to the injunctive relief. If it is true that Mr. Hogan's value was in, um, attending class on campus for that semester, um, the court can certainly order that, um, he is entitled to injunctive relief to go back and repeat that semester. I understand it may not make much sense because he has already graduated, but I'd like an injunction that value is still there and available to him. Um, if it is like a remedy, it sounds like a penalty. Is that an eighth amendment violation? Well, he's, he's the one that brought the suit seeking that remedy. Um, and so I would extend, I mean, I mentioned class action to one of your friends on these different tables. This hasn't been certified. It does seem to me that perhaps the application and the constitutionality of it might vary depending on whether there is a legitimate remedy left. Or not. And for somebody still in school, I don't know what the injunctive relief would be, don't do it again, or something like that, or give him a, uh, you know, declaratory judgment that if it happens again, here's what you have to do. I mean, is that any way to draw the line between those? Of course, you disagree at all that, uh, this is potentially, uh, unconstitutional. But it seems to me if this case had a different plaintiff, uh, you would have a stronger argument. Not that you have a losing argument yet, but it would be stronger if, if there was some benefit of an injunction. I mean, and, and as, as I just expressed, I believe that there is some benefit to an injunction, uh, for Mr. Hogan if he really desired, um, that on-campus experience. Um, that is still available to him. But, uh, yes, Your Honor, that certainly some other, um, hypothetical student who was still attending classes, um, might be entitled to more relief above and beyond that which Mr. Hogan might be entitled to. Um, and with that, I see my time is up, and thank you. You want to propose that to your client, that we could get him back into school? I'll see what he says. So, I just want to touch on a few points that were made. Um, the first is under the reading that my, uh, colleagues would have this court adopt, no law affecting the right to recover money damages could ever be retroactive. Because you can always come in here and say, well, hey, why doesn't he just get an injunction? Mr. Hogan doesn't want an injunction. He wants money. Look at 347 in the record. That's our wherefore clause. As I said, the concept of injunctive and declaratory relief, that's just a throwaway line. And if you read the complaint, that's not what he's asking for. So, unless this court wants to create that rule that laws affecting monetary recovery are never retroactive, then it has to look at the case different than as suggested by my colleagues here. In addition, on the matter of pleadings, the King decision came out after Judge Starr looked at this case. My client should have every right to proceed with this claim in accordance with this new decision that clarified the law. His statute of limitations isn't up. Do, I mean, does, does SMU want him to just file a new complaint? I mean, to, to put him in a situation where this new law comes down during the appeal process and what he has no right to avail himself of it would be completely unfair and it's not supported by the law. And finally, I also, well, I should also note that Judge Starr did not specifically look at the question of what educational purposes means. He looked at a number of different factors and decided that there was no contract, but he never said, okay, what does educational purposes mean in light of the fact that these different contextual clues exist? And finally, I just want to speak about predictability. There was a question of whether recovery on Mr. Hogan's claim was predictable enough, and that's just not required here. For instance, if you look at the Tenet case, the claim was considered mature because it was, quote, an established cause of action in Texas. In Robinson, the court ruled that Robinson's had a well-recognized common law cause of action. That's all we're looking for. Is it a claim that's actually cognizable or are they just making things up? Mr. Hogan here had and actually pled a breach of contract claim. And in addition, Judge Starr's views on the recovery were certainly tainted by the fact that he had not yet had a chance to read the King v. Baylor decision. He'd feel a little differently. He didn't look at your concurrence either. Then he would have known what to do. Without knowing what the law was going to be, he couldn't know that recovery was actually somewhat more likely than he initially thought. With that, I thank you very much. All right, counsel. Thank you to all counsel who have presented argument today and assisted in that until tomorrow afternoon at one o'clock.